1  FRANK N. DARRAS #128904, fdarras@sbd-law.com
2  LISSA A. MARTINEZ #206994, lmartinez@sbd-law.com
   SHERNOFF BIDART DARRAS ECHEVERRIA, LLP
3  3257 East Guasti Road, Suite 300
   Ontario, CA  91761
4  Telephone:   (909) 390-3770
5  Facsimile:   (909) 974-2121

6  CESAR GAVIDIA JR., # 243992, cesar@diattorney.com
   DELL & SCHAEFER
7  2404 Hollywood Boulevard
   Hollywood, FL 33020
8  Telephone:   (800) 828-7583
9  Facsimile:   (800) 531-8971

10  Attorneys for Plaintiff

11

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14  MARC ANKER, M.D.,                     C08     03017 RMW

15         Plaintiff,                                       HRL

16                                        COMPLAINT FOR BENEFITS UNDER A
                                          GROUP DISABILITY EMPLOYEE
17     vs.                                BENEFIT PLAN

18  LIFE INSURANCE COMPANY OF
19  NORTH AMERICA; and THE
    PERMANENTE MEDICAL GROUP, INC.
20  PLAN 602,

21         Defendants.

22

23         Plaintiff alleges as follows:

24         1.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337

25  and 29 U.S.C.§ 1132(a), (e), (f) and (g), of the Employee Retirement Income Security

26  Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by

27  Plaintiff for Disability benefits under an employee benefit plan regulated and governed

28  under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C.

ORIGINAL

1   § 1331 as this action involves a federal question.

2       2.      The events or omissions giving rise to Plaintiff's claim occurred in this

3   judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2), and the

4   ends of justice so require.

5       3.      The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of

6   the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

7   Those avenues of appeal have been exhausted.

8       4.      Plaintiff is informed and believes and thereon alleges that Defendant, THE

9   PERMANENTE MEDICAL GROUP, INC. PLAN 602, is an employee welfare benefit

10  plan established and maintained by The Permanente Medical Group, Inc. (which,

11  Plaintiff alleges, does business in the State of California), to provide its

12  employees/Partners, including MARC ANKER, M.D. ("DR. ANKER"), with income

13  protection in the event of a disability, and, is the Plan Administrator.

14      5.      Plaintiff alleges upon information and belief that Defendant, LIFE

15  INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times

16  was, a corporation duly organized and existing under and by virtue of the laws of the

17  State of Pennsylvania; authorized to transact and transacting the business of insurance

18  in this state; and, the insurer and Claims Administrator for the Plan.

19      6.      At all relevant times Plaintiff was, a resident and citizen of the State of

20  California, an employee of The Permanente Medical Group, Inc., its affiliates and/or

21  subsidiaries, and a participant in the Plan.

22      7.      Based upon information and belief, Plaintiff alleges that Defendant LINA[1]

23  issued Group Policy number LK0030054 to The Permanente Medical Group, Inc.

24

---

25  [1] Although correspondence to DR. ANKER during the administration of this claim has "CIGNA" on the
26  letterhead, LINA was the underwriting and issuing company. Additionally, according to correspondence to
    DR. ANKER on the claim: "'CIGNA' and 'CIGNA Group Insurance' are registered service marks and refer
27  to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these
    subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North
28  America…" Therefore, both CIGNA and Life Insurance Company of North America will be referred to as
    "LINA" herein.

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    (attached hereto as Exhibit "A") to insure its Plan, and the eligible participants and

2    beneficiaries of the Plan; and that the Policy promised to pay DR. ANKER monthly

3    benefits for a specified period of time should he become disabled. Therefore, LINA

4    suffers from a structural conflict as it both funds the plan and decides whether the

5    claimants will receive benefits under the Plan[2].

6        8.        According to the terms of the Plan, LINA promised to pay benefits as

7    follows:

| Term | Provision |
|---|---|
| **Benefit Waiting Period** | 6 months |
| **Disability Benefit** | Option 1: The lesser of 50% of your monthly prorated Covered Earnings rounded to the nearer dollar or your Maximum Disability Benefit, reduced by any other Income Benefits. Your Covered Earnings are determined by prorating your base salary as of the date your Disability begins by the average schedule (rounded up to the nearest unit) you maintained during the 12 months prior to the date your Disability begins. Option 2: The lesser of 60% of your monthly prorated Covered Earnings rounded to the nearer dollar or your Maximum Disability Benefit, reduced by any Other Income Benefits. Your covered Earnings are determined by prorating your base salary as of the date your Disability begins by the average schedule (rounded up to |

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

[2] According to the recent case of *Saffon v. **Wells Fargo & Co**. Long Term Disability Plan* (F.3d, 2008 WL 80704 (9th Cir. (Cal.) Jan. 9, 2008): "In *Bruch*, the Supreme Court instructed us to 'weigh[]' a fiduciary's 'conflict of interest' as 'a facto[r] in determining whether there is an abuse of discretion.'…MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims…The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage…to line its own pockets by denying meritorious claim."

| Term | Provision | |
|---|---|---|
| | the nearest unit) you maintained during the 12 months prior to the date your Disability begins. | |
| **Maximum Disability Benefit** | Option 1: $12,500 per month<br>Option 2: $15,000 per month | |
| **Minimum Disability Benefit** | $100 per month | |
| **Maximum Benefit Period** | **Age When Disability Begins** | **Maximum Benefit Period** |
| | Age 62 or under | Your 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| **Disability** | For purposes of coverage under the Policy, you are Disabled if, because of Injury or Sickness, you are unable to perform all the material duties of your regular occupation, or solely due to Injury or sickness, you are unable to earn more than 80% of your Indexed Covered Earnings.<br><br>After Disability Benefits have been payable for 60 months, you are Disabled if your Injury or sickness makes you unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, you are unable to earn more than 80% of your Indexed Covered Earnings. | |

9.     Prior to his disability, DR. ANKER had been employed with The Permanente Medical Group, Inc. as an obstetrician/gynecologist since in or about 1986 with full admitting, surgical and emergency room privileges.

10.     His substantial and material duties while employed as an

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    obstetrician/gynecologist, prior to his disability in or about December, 2004, included the

2    following:

3       • Patient Examinations;

4       • Performing day, evening, night and on-call shifts in order to provide patient

5          care in four settings: the clinic, on-call, surgery, and, labor and delivery; all

6          without scheduled breaks during the work day;

7       • Providing care in the emergency room and/or the operating room during

8          his on call shift while also providing services in the labor and delivery unit;

9       • Performing hospital consults; general OB/GYN duties and rounds on all

10         hospital admitted patients;

11      • Performing surgeries that could last anywhere from forty (40) minutes up

12         to 2.5 hours;

13            ▪ Vaginal deliveries;

14            ▪ Cesarean deliveries;

15            ▪ Vaginal hysterectomies;

16            ▪ Abdominal hysterectomies;

17            ▪ Laparoscopies;

18            ▪ Cystocele repairs;

19            ▪ Urethral placations;

20            ▪ Enterocele repairs;

21            ▪ Rectocele repairs;

22            ▪ Adnexectomies;

23            ▪ Ectopic pregnancies;

24            ▪ Posterior urethropexies; and

25            ▪ Serving as an assistant surgeon.

26      • Lifting up to fifty (50) pounds.

27    11.    In or about December, 2004, DR. ANKER suffered a severe back pain

28    flare up which left him completely unable to work for several days. Since that date, DR.

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    ANKER has not been able to return to full time employment as an OB/GYN due to the

2    pain generated from the constant bending, stooping, sitting, lifting and hunching that are

3    required to perform the substantial and material duties of his occupation.

4        12.    Due to his severely debilitating and chronic low back pain, multilevel disc

5    degeneration (with lateral recess stenosis[3] in the subarticular zone at the L4-5 level

6    secondary to ligamentum flavum hypertrophy), right sided disk protrusion at the L4-5

7    and lumbar disc displacement, DR. ANKER, since in or about December, 2004, has

8    been unable to perform all of the material duties of his occupation.

9        13.    Additionally, since approximately December of 2004, due solely to the

10    aforementioned conditions, DR. ANKER has been unable to earn more than 80% of his

11    Indexed Covered Earnings.  As he was disabled pursuant to the terms of the Plan, he

12    subsequently filed a disability claim with LINA for benefits under the terms of the Plan.

13    However, to date, LINA has unreasonably, arbitrarily and capriciously not paid him any

14    benefits.

15        14.    He was subsequently treated by Dr. Andrea Wilcox, a board certified

16    physical medicine physician, who recommended that he rest his back and reduce his

17    workload to approximately 60% of his previous work schedule.  Acupuncture treatments

18    were also used to try and alleviate some of the pain, however, it did not provide long

19    term pain improvement.

20        15.    On or about November 7, 2005, Dr. Leslie Oshita, M.D., a board certified

21    internal medicine physician, diagnosed Dr. Anker with herniated nucleus pulposus[4],

22

23

_____

24
25    [3] Spinal stenosis occurs when the channels that the spinal cord and nerve roots travel through become narrower-so narrow that the spinal cord and nerve roots get squeezed.

26    [4] Disc herniation is a common cause of leg and back pain. A disc is composed of two parts: an outer rim
27    of fibrous (tough) tissue surrounding an inner loose material. When there is a break in the outer rim, the inner material can leak out of the disc space and enter the spinal canal where the disc material can compress nerve roots or the spinal cord. Compression on the nerves can cause sciatica or shooting pain
28    down one or both legs. Back pain can accompany the leg symptoms as well. Furthermore, neurological symptoms such as weakness or numbness in the involved legs may occur. The pain associated with disc herniation usually improves with lying down and worsens with prolonged sitting/standing or walking.

1   chronic low back pain, and lumbar radiculopathy[5].

2       16.    Additionally, another examination by Dr. Oshita on or about December 9,

3   2005, rendered the following notes:

-     "His primary care physician has specified reducing his workload and, therefore, he's been working 6 units a week."

-     "He's been to physical therapy, chiropractor, and had epidural steroid injections with…no long term improvement."

-     "He says the positions he has to get into for examinations of his patients, as well as for surgeries aggravate his low back."

10       17.    And, on or about February 28, 2006, LINA received a fax from yet another

11   physician, Dr. Lim-Young, a board certified internal medicine physician, which stated:

12   "He has herniated disc L5 confirmed by MRI. That would support his physical symptoms

13   of chronic low back pain."

14       18.    But, LINA, without an independent medical examination, unreasonably,

15   arbitrarily and capriciously denied DR. ANKER disability benefits according to a letter

16   dated on or about March 6, 2006.  Incredulously, LINA alleged that: "…the information

17   provided does not provide a medical rationale for not being able to work as an OB/GYN

18   physician at your full-time schedule of 40 hours per week."

19       19.    In so doing, LINA relied in large part upon a medical record review by a

20   doctor, Robert Manolakas, M.D., that is employed by LINA full time, has not had

21   hospital privileges since approximately 1994 and has not engaged in any clinical

22   ——————————————

23   [5] Doctors use the term radiculopathy to specifically describe pain, and other symptoms like numbness,
24   tingling, and weakness in the arms or legs that are caused by a problem with nerve roots. The nerve roots
     are branches of the spinal cord that carry signals to the rest of the body at each level along the spine.
25   This term comes from a combination of the Latin word "radix," which means the roots of a tree, and the
     Latin word "pathos," which means a disease. This disease is often caused by direct pressure from a
26   herniated disc or degenerative changes in the lumbar spine that cause irritation and inflammation of the
     nerve roots. Radiculopathy usually creates a pattern of pain and numbness that is felt in the arms or legs
27   in the area of skin supplied the by sensory fibers of the nerve root, and weakness in the muscles that are
     also supplied by the same nerve root. The number of roots that are involved can vary, from one to
28   several, and it can also affect both sides of the body at the same time.

SHERNOFF BIDART
DARRAS ECHEVERRIA₃
LAWYERS FOR INSURANCE POLICYHOLDERS

1   practice since about 2005.  Reliance upon a record review by this financially conflicted

2   non-examining physician will further heighten the level of skepticism with which this

3   court will view its conflicted administrator's decision.

4        20.    On or about June 2, 2006, an MRI of his lumbosacral spine revealed the

5   following:

- Comparison is made with copies from a study performed on 4/7/92.

- "There is decreased height and signal intensity of the L4-5 intervertebral disc with right paracentral disc herniation impinging upon the right L5 nerve root and narrowing the right L4-5 neural foramen."

- "There is also decreased signal intensity of the L5-S1 intervertebral disc..."

- **IMPRESSION**: right L4-5 intervertebral disc herniation impinging on the right L5 nerve root; degenerative disc disease to L5-S1 interspace.

14       21.    On or about August 17, 2006, Dr. Anker was again evaluated by Dr.

15  Oshita, who subsequently reported the following:

- **ASSESSMENT**: Chronic low back pain; history of herniated disc, lumbar spine; history of lumbar radiculopathy; degenerative disc disease, lumbosacral spine.

- "...his condition remains the same, with persistent waxing and waning low back pain."

- "With acute, severe flare-ups, he experiences pain radiating to his right lower leg and paresthesias along the lateral aspect of his right calf."

- "It is my opinion Dr. Anker's work-related aggravation of his chronic back pain, herniated L4-5 intervertebral disc, and lumbar radiculopathy can be deemed permanent and stationary as of August 17, 2006."

- "The factors of disability are:

  - Subjective: Constant, slight, intermittent slight to moderate, and less than occasional moderately severe low back pain, associated

with radiation to, and paresthesias along the lateral aspect of, the right lower leg.

- Objective: ...MRI of the lumbosacral spine on September 20, 2006...anterior spurring of L4-5 and L5-S1 with posterior disc space height loss...L3 demonstrates focal posterior disc protrusion...L4-5 demonstrates focal diffuse annular bulge with posterior disc protrusion...L5-S1 demonstrates...posterior disc bulge..."

- "It is expected the degenerative process will progress over time and likely become more symptomatic."

- WORK STATUS: "Dr. Anker has been and remains on modified duty, with a reduced work schedule. In addition, due to the symptomatic exacerbations from standing in the Operating Room and performing surgeries, he should be precluded from this duty."

- "...the option of surgery should remain available to him."

- "In the interim, he should continue with his exercise program, be cognizant of his body mechanics, and avoid potentially aggravating activities, e.g., heavy lifting, prolonged sitting or standing, repetitive bending, stooping, or twisting."

22. Additionally, on or about August 18, 2006, A Primary Treating Physician's Progress Report was completed by Dr. Oshita which stated:

- **DIAGNOSES**: chronic low back pain; herniated disc, L4-5; lumbar radiculopathy.

- Work Status: Return to modified work on 08/17/2006 with the following limitations or restrictions: Permanent restrictions including: 6 units per week. No work in the Operating Room.

- "Patient is permanently precluded from engaging in his/her usual and customary occupation and the above limitations/restrictions are deemed

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    permanent."

2    23.    On or about October 11, 2006, DR. ANKER was evaluated by Dr. Todd

3    Alamin, a board certified orthopedic surgeon, who reported:

4    •    "Review of his latest MRI scan, which was performed recently,

5        demonstrates multilevel disk degeneration with lateral recessed

6        stenosis...and a right sided disk protrusion at the L4-5 level."

7    24.    On or about November 6, 2006, Dr. Anker was again examined by Dr.

8    Todd Alamin, who noted the following:

9    •    "He works as an OB/GYN and has cut back his work schedule to 60%

10        because of his inability to perform his usual exam on a daily basis. He is

11        also unable to perform surgery because of his low back and right lower

12        extremity pain. It should be noted that the work as an OB/GYN is quite

13        physically demanding involving prolonged episodes of forward flexion and

14        awkward lumbar positioning...Sitting is always worse for him...He finds

15        that his working conditions made his pain worse."

16    •    "I have told the patient that with regard to his chronic lower back pain

17        there is no predictable, highly effective operation...and that the activity

18        modification that he has undergone over the last several years including

19        decreasing his working to 60% is probably the most effective treatment for

20        it."

21    25.    On or about December 5, 2006, Dr. Oshita reported the following to LINA:

22    •    Totally disabled from 12/1/2004.

23    •    Chronic low back pain – right recurrent L4-5 herniated nucleus pulposus.

24    •    "Can work 6 units/week."

25    •    "No work in the operating room."

26    26.    On or about December 18, 2006, DR. ANKER, by and through counsel,

27    appealed the denial. According to the appeal letter:

28    •    "Dr. Anker's diagnoses have remained constant..."

SHERNOFF BIDART DARRAS ECHEVERRIA₃ LAWYERS FOR INSURANCE POLICYHOLDERS

- "Physicians of different specialties have consistently diagnosed him with multilevel disk degeneration with lateral recessed stenosis in the subarticular zone at the L4-5 level secondary to ligamentum flavum hypertrophy, right-sided disk protrusion at the L4-5, lumbar disc displacement and chronic low back pain as evidenced in the Claim File and by Dr. Anker's medical records."

- "It is evident...that Dr. Anker's diseases are chronic, serious and debilitating."

- "Unfortunately, Dr. Anker's serious and debilitating physical conditions rendered him and continue to render his disabled and unable to perform the material duties of his occupation."

- "...prolonged sitting, standing, and walking cause intense pain and exacerbate his condition."

- "When he exerts himself, he suffers."

- "The denial letter lacks any reliable evidence to support its arbitrary determination."

- "CIGNA failed to provide Dr. Anker with a full copy of his Claim File in violation of ERISA."

- "...any...reports relied upon...by CIGNA reviewing and rendering its decision to deny Dr. Anker's...benefits is relevant to Dr. Anker's claim, yet same were not provided."

- "The denial letter...fails to put Dr. Anker on notice as to how he may appeal the decision and what exact information is required of him in order to overturn the denial..."

27.    But, still LINA failed to pay the disability benefits.  On or about March 9, 2007, LINA unreasonably, arbitrarily and capriciously denied DR. ANKER the benefits to which he was entitled under the terms of the Plan.  In so doing, Plaintiff alleges upon information and belief, LINA relied upon a medical record review from a financially

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

conflicted source – Intracorp[6]. These actions by LINA once again further heighten the level of skepticism with which this court will view its conflicted administrator's decision.

28.    On or about September 7, 2007, an appeal of the denial was submitted on behalf of DR. ANKER by his attorneys. According to the appeal letter:

- HISTORY OF MARC ANKER'S PHYSICAL DISABILITY:

  - "Under the clear, express terms of the...Disability insurance policy, Dr. Anker is entitled to past and current disability benefits, as he satisfies the definition of total disability through [the] present day."

  - "Dr. Anker's diagnoses include severe debilitating and chronic low back pain, multilevel disk degeneration with lateral recessed stenosis in the subarticular zone secondary to ligamentum flavum (band of elastic tissue assisting in maintaining or regaining erect position) hypertrophy, right side lumbar disk protrusion and lumbar disk displacement."

  - "Up until his experiences with the aforementioned debilitating conditions, Dr. Anker was an Obstetrician with full admitting, surgical and emergency room privileges."

  - "In December 2004, while standing, Dr. Anker suffered a severe back flare up which left him completely unable to work for several days."

  - "Thereafter, he treated with Dr. Andrea Wilcox, M.D., who recommended that he rest his back and reduce his workload to 60% of his previous work schedule."

  - "Since December 2004, Dr. Anker was instructed by his physicians, Dr. Leslie Oshita, Dr. Katherine Lim Young, Dr. Andrea Wilcox and

---

[6] According to correspondence to DR. ANKER on the claim: "'CIGNA' and 'CIGNA Group Insurance' are registered service marks and refer to various operating subsidiaries of CIGNA Corporation." Besides LINA, subsidiaries of CIGNA Corporation include, but are not limited to: International Rehabilitation

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    Dr. Joseph Debonis to discontinue the practice of obstetrics and cut

2    back his clinical workload to 60%.

3    ▪ "The practice of obstetrics and gynecology requires constant

4    standing, stooping, sitting and hunching; unfortunately, Dr. Anker's

5    pain has compromised his ability to practice effectively and safely

6    on his patients."

7    • DR. ANKER'S RIGHT TO TOTAL DISABILITY BENEFITS:

8    ▪ "A review of CIGNA's denial letter…reveals a fundamentally flawed

9    analysis of Dr. Anker's disability claim and the subject disability

10    plan terms as well as a deficient review of the significant medical

11    and vocational evidence of Dr. Anker's disability…"

12    ▪ "Despite the overwhelming support of disability in the medical

13    documentation, records, and statements provided by Dr. Anker and

14    his treating physicians evidencing his complete and total inability to

15    perform all of the material duties of his occupation, CIGNA has

16    arbitrarily denied Dr. Anker's claim…even though he has satisfied

17    all proof of loss requirements."

18    29.    However, instead of paying DR. ANKER the benefits to which he is

19    entitled under the terms of the Plan, on or about December 18, 2007, LINA once again

20    unreasonably, arbitrarily and capriciously upheld its prior denial, and stated: "…you

21    have exhausted all administrative levels of appeal and no further appeals will be

22    considered."

23    30.    To date, even though DR. ANKER has been, and remains, disabled, LINA

24    has not paid DR. ANKER any disability benefits beyond the Benefit Waiting Period. The

25    arbitrary and capricious nature of LINA's denial decision is evidenced by, but not limited

26    to, the following:

27

28

Associates, Inc., d/b/a Intracorp. Therefore, both LINA and Intracorp are "sister" corporations that are subsidiaries of the same parent company.

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART
DARRAS ECHEVERRIA³
LAWYERS FOR INSURANCE POLICYHOLDERS

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to, failing to promptly identify the medical consultants who reviewed his file; failing to advise DR. ANKER of what specific documentation it needed for him to perfect his claim; and, failing to provide a complete copy of all documents, records, and other information relevant to his claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);

- LINA ignored the obvious, combed the record and has taken selective evidence out of context as a pretext to deny Plaintiff's claim; and,

- LINA ignored the opinions of DR. ANKER's treating physicians. Deference should be given to the treating physician's opinions as there are no *specific, legitimate* reasons for rejecting the treating physician's opinions which are based on *substantial evidence* in the claim file. Further, LINA's *physicians'* opinions do not serve as *substantial evidence*, as they are not *supported by evidence* in the claim file nor are they *consistent with the overall evidence* in the claim file.

31.    For all the reasons set forth above, the decision to deny disability insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Clearly, LINA abused its discretion in deciding to deny this claim as the evidence shows its denial decision was arbitrary and capricious. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006).

32.    As a direct and proximate result of the LINA's failure to provide DR. ANKER with disability benefits, DR. ANKER has been deprived of said benefits from on or about the end of the Benefit Waiting Period, to the present date.

33.    As a further direct and proximate result of the denial of benefits, DR.

1    ANKER has been required to incur attorney fees to pursue this action, and is entitled to

2    have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA § 502(g)

3    (1).

4        34.    A controversy now exists between the parties as to whether DR. ANKER

5    is disabled as defined in the Plan.  Plaintiff seeks the declaration of this Court that he

6    meets the Plan definition of disability and thus he is entitled to benefits from the Plan.  In

7    the alternative, Plaintiff seeks a remand to the Plan Administrator for a determination of

8    Plaintiff's claim consistent with the terms of the Plan.

9        WHEREFORE, Plaintiff prays for relief against Defendants as follows:

10       1.    An award of benefits in the amount not paid DR. ANKER from on or about

11   the end of the Benefit Waiting Period, to the date of judgment herein, together with

12   interest at the legal rate on each monthly payment from the date it became due until the

13   date it is paid; or, in the alternative, a remand to the Plan Administrator for a

14   determination of Plaintiff's claim consistent with the terms of the Plan;

15       2.    An order determining DR. ANKER is entitled to future disability payments

16   so long as he remains disabled as defined in the Plan;

17       3.    An order requiring LINA to pay $110 a day, from the date first requested,

18   for each day in which LINA failed or refused to comply with Plaintiff's requests for

19   information which LINA was required, by statute/regulation, to furnish pursuant to

20   ERISA section 502(c) [29 USC sec. 1132(c)].

21       4.    For reasonable attorney fees incurred in this action; and

22       5.    For such other and further relief as the Court deems just and proper.

23

24   Dated:  June 16, 2008        SHERNOFF BIDART DARRAS
                                   ECHEVERRIA, LLP
25

26

27                                 FRANK N. DARRAS
                                   Attorney for Plaintiff
28

- 15 -
COMPLAINT

UNDERWRITTEN BY:
LIFE INSURANCE COMPANY OF NORTH AMERICA
a CIGNA Company

Class 1
12/2003



CIGNA Group Insurance
Life • Accident • Disability

000016

EXHIBIT A

**LIFE INSURANCE COMPANY OF NORTH AMERICA**
(herein called the Company)

Amendment to be attached to and made a part of the Group Policy
A Contract between the Company and

The Permanente Medical Group, Inc.
(herein called the Policyholder)

Policy No.: LK-030054

This Amendment will be in effect on the Effective Date shown below only for insured Employees in Active Service on that date. If an Employee is not in Active Service on the date his insurance would otherwise become effective, it will be effective on the date he returns to Active Service.

The Company and the Policyholder hereby agree that the Policy is amended as follows:

Effective January 1, 2003, the Policy is amended to delete the "Other Income Benefits" section of the Policy and replace it with the following:

"Other Income Benefits
While an Employee or Physician is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits. The extent to which Other Income Benefits will reduce any Disability Benefits payable under the Policy is shown in the Schedule of Benefits.

Other Income Benefits include:
1.  any amounts which the Employee or Physician or any dependents, if applicable, receive (or are assumed to receive*) under:
    a. the Canada and Quebec Pension Plans;
    b. the Railroad Retirement Act;
    c. any local, state, provincial or federal government disability or retirement plan or law as it pertains to the Employer;
    d. any sick leave plan of the Employer;
    e. any work loss provision in mandatory "No-Fault" auto insurance;
    f. any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.
2.  any Social Security disability benefits the Employee or Physician or any third party receives (or is assumed to receive*) on the Employee or Physician's behalf or for his or her dependents; or, if applicable, which his or her dependents receive (or are assumed to receive*) because of the Employee or Physician's entitlement to such benefits.
3.  any retirement plan benefits elected by the Physician, except to the extent such benefits were funded with contributions made by the Physician. "Retirement Plan Benefits" are based on service with any Kaiser Permanente Medical Care Organization (as listed in Appendix X of the Retirement Plan for Physicians and Salaried Employees of The Permanente Medical Group, Inc.); are based on the method of payment elected but do not include amounts rolled over to an individual retirement account. "Retirement Plan" means any defined benefit plan sponsored or funded by any Kaiser Permanente Medical Care Organization. It does not include an individual deferred compensation plan sponsored or funded by a Physician's Employer; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

000017

EXHIBIT A

4. any full early retirement plan benefits, which the Physician voluntarily elects to receive, whether such benefits are paid to the Physician or to another payee.

5. any proceeds payable under any franchise or group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, the Insurance Company will pay its pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

6. any wage, vacation pay, salary, or income from self-employment for work performed. Vacation pay does not include "vacation payoff", which is a lump sum payment of unused accrued vacation time that does not replace earnings. If an Employee or Physician is covered for Work Incentive Benefits, the Insurance Company will only reduce Disability Benefits to the extent provided under the Work Incentive Benefit in the Schedule of Benefits.

Dependents include any person who receives (or is assumed to receive) benefits under any applicable law on account of an Employee or Physician's entitlement to benefits.

\* See the Assumed Receipt of Benefits provision.

*Increases in Other Income Benefits*

After the first deduction for any Other Income Benefit (except wage, salary or income from self-employment) is made, benefits will not be further reduced during that period of Disability due to any cost of living increase in that Other Income Benefit.

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated the lump sum will be prorated monthly over a five year period.

If no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit.

*Assumed Receipt of Benefits*

The Insurance Company will assume the Employee or Physician (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them. These assumed benefits will be the amount the Insurance Company estimates the Employee or Physician (or his or her dependents, if applicable) may be eligible to receive. Disability Benefits will be reduced by the amount of any assumed benefits as if they were actually received.

Except for any wage, salary or self-employment income for work performed while Disability Benefits are payable, this assumption will not be made if the Employee or Physician gives the Insurance Company proof of the following events.

1. Application was made for these benefits.
2. A Reimbursement Agreement is signed.
3. Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful.
4. Payments were denied.

The Insurance Company will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee or Physician actually receives them.

**000018**      EXHIBIT A

*Social Security Assistance*

The Insurance Company will, at its discretion, assist the Employee or Physician in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by the assumed receipt of SSDI benefits while the Employee or Physician participates in the Social Security Assistance Program.

The Insurance Company may require the Employee or Physician to file an appeal if it believes a reversal of a prior decision is possible. If the Employee or Physician refuses to participate in, or cooperate with, the Social Security Assistance Program, the Insurance Company will assume receipt of SSDI benefits until the Employee or Physician gives us proof that all administrative remedies are exhausted.

Except for the above, this Amendment does not change the Group Policy in any way.

FOR THE COMPANY

By: 

    Gregory H. Wolf, President

Date: December 11, 2003

Amendment No. 3 (revised)

TL-004780

000019

EXHIBIT A

Group Insurance Plan

# Long Term Disability Insurance

*Policy:*
*LK 030054*

The Permanente Medical Group, Inc.

000020

EXHIBIT A

Disability insurance provides individuals and their families with financial protection. The Disability Insurance Benefit described in this booklet will help secure your family's financial security in the event of your disability.

The need for disability insurance protection depends on individual circumstances and financial situations. Your Employer is offering you the opportunity to purchase this insurance to make your benefit program more comprehensive and responsive to your needs.

The following pages describe the main provisions of the group disability insurance plan available to you.

Any insurance benefit described in the following pages will apply to you only if you have elected that benefit and have authorized payroll deduction for the required premium.

EXHIBIT  A

LIFE INSURANCE COMPANY OF NORTH AMERICA
1601 CHESTNUT STREET
PHILADELPHIA, PA 19192-2235
(800) 732-1603  TDD (800) 552-5744
A STOCK INSURANCE COMPANY

GROUP INSURANCE
CERTIFICATE

We, the LIFE INSURANCE COMPANY OF NORTH AMERICA, certify that we have issued a Group Policy, LK-030054, to The Permanente Medical Group, Inc.

We certify that we insure all eligible persons, who are enrolled according to the terms of the Policy.  Your coverage will begin and end according to the terms set forth in this certificate.

This certificate describes the benefits and basic provisions of your coverage.  You should read it with care so you will understand your coverage.

This is not the insurance contract.  It does not waive or alter any of the terms of the Policy.  If questions arise, the Policy will govern.  You may examine the Policy at the office of the Policyholder or the Administrator.

This certificate replaces any and all certificates which may have been issued to you in the past under the Policy.

General Vice President

TL-004704

000022

EXHIBIT  A

# TABLE OF CONTENTS

SCHEDULE OF BENEFITS ............................................................... 1

WHO IS ELIGIBLE ...................................................................... 3

WHEN COVERAGE BEGINS .............................................................. 3

WHEN COVERAGE ENDS ................................................................ 3

WHEN COVERAGE CONTINUES .......................................................... 3

WHAT IS COVERED .................................................................... 4

WHAT IS NOT COVERED ............................................................... 9

CLAIM PROVISIONS ................................................................... 9

ADMINISTRATIVE PROVISIONS ........................................................ 11

GENERAL PROVISIONS ................................................................ 11

DEFINITIONS ....................................................................... 12

000023

EXHIBIT A

| | |
|---|---|
| Policy Effective Date: | November 1, 1998 |
| Revise and Reissue Date: | March 12, 2003 |
| Policy Anniversary Date: | January 1 |
| Policy Number: | LK-030054 |
| Eligible Class Definition: | All active Physicians, Contract Physicians, Podiatrists, Oral and Maxillofacial Surgeons (except Pools) and Executive Employees of the Employer regularly working a minimum of 6 units (24 hours) per week. |

**Eligibility Waiting Period**
If you were hired on or before
the Policy Effective Date:                     No Waiting Period
If you were hired after
the Policy Effective Date:                     No Waiting Period

**Benefit Waiting Period**
                    Option 1          6 months
                    Option 2          6 months

**Disability Benefit**

Option 1          The lesser of 50% of your monthly prorated Covered Earnings rounded to the nearer dollar or your Maximum Disability Benefit, reduced by any Other Income Benefits. Your Covered Earnings are determined by prorating your base salary as of the date your Disability begins by the average schedule (rounded up to the nearest unit) you maintained during the 12 months prior to the date your Disability begins.

Option 2          The lesser of 60% of your monthly prorated Covered Earnings rounded to the nearer dollar or your Maximum Disability Benefit, reduced by any Other Income Benefits. Your Covered Earnings are determined by prorating your base salary as of the date your Disability begins by the average schedule (rounded up to the nearest unit) you maintained during the 12 months prior to the date your Disability begins.

If due to Injury or Sickness, you are unable to perform your regular occupation for the Employer on a Full-time basis, you may pay the premium necessary to maintain coverage at your Full-time regular occupation.

"Other Income Benefits" means any benefits listed in the Other Income Benefits provision that you receive on your own behalf or for your dependents, or which your dependents receive because of your entitlement to Other Income Benefits.

**Maximum Disability Benefit**
                    Option 1          $12,500 per month
                    Option 2          $15,000 per month

EXHIBIT A

Minimum Disability Bene...

| | |
|---|---|
| Option 1 | $100 per month |
| Option 2 | $100 per month |

**Maximum Benefit Period**

| Age When Disability Begins | Maximum Benefit Period |
|---|---|
| Age 62 or under | Your 65th birthday or the date the 42nd Monthly Benefit is payable, if later. |
| Age 63 | The date the 36th Monthly Benefit is payable. |
| Age 64 | The date the 30th Monthly Benefit is payable. |
| Age 65 | The date the 24th Monthly Benefit is payable. |
| Age 66 | The date the 21st Monthly Benefit is payable. |
| Age 67 | The date the 18th Monthly Benefit is payable. |
| Age 68 | The date the 15th Monthly Benefit is payable. |
| Age 69 or older | The date the 12th Monthly Benefit is payable. |

TL-004774 (30054)

EXHIBIT A

WHO IS ELIGIBLE

If you qualify under the Class Definition shown in the Schedule of Benefits or are a Physician on an approved leave of absence you are eligible for coverage under the Policy on the Policy Effective Date, or the day after you complete the Eligibility Waiting Period, if later. The Eligibility Waiting Period is the period of time you must be in Active Service or on an approved leave of absence to be eligible for coverage. Your Eligibility Waiting Period will be extended by the number of days you are not in Active Service or on an approved leave of absence.

Except as noted in the Reinstatement Provision, if you terminate your coverage and later wish to reapply, or if you are a former Employee or Physician who is rehired, you must satisfy a new Eligibility Waiting Period. You are not required to satisfy a new Eligibility Waiting Period if your insurance ends because you no longer qualify under your Class Definition, but you continue to be employed, and within one year you qualify again.

TL-004710

## WHEN COVERAGE BEGINS

If you are required to contribute to the cost of your insurance you may elect to be insured only by authorizing payroll deduction in a form approved by the Employer and us. The effective date of your insurance depends on the date coverage is elected.

If you elect coverage within 60 days after you become eligible or you are a Contract Physician who applies for insurance within 60 days of being reclassified to Associate Physician status, insurance is effective on the latest of the following dates.
1.  The Policy Effective Date.
2.  The date you authorized payroll deduction.
3.  The first of the month following the date the completed enrollment form is received by the Physician Benefits Department.

If you are not in Active Service or on an approved leave of absence on the date your insurance would otherwise be effective, it will be effective on the date you return to any occupation for your Employer on a Full-time basis.

TL-004712 (30054)

## WHEN COVERAGE ENDS

Your insurance ends on the earliest of the dates below.
1.  The date you are eligible for coverage under a plan intended to replace this coverage.
2.  The date the Policy is terminated.
3.  The date you no longer qualify under your Class Definition.
4.  The day after the period for which premiums are paid.
5.  The date you are no longer in Active Service or on an approved leave of absence.

TL-004714

## WHEN COVERAGE CONTINUES

Your Disability Insurance will continue if your Active Service ends because of a Disability for which benefits under the Policy are or may become payable. Your premiums will be waived while Disability Benefits are payable. If you do not return to Active Service, this insurance ends when your Disability ends or when benefits are no longer payable, whichever occurs first.

If your Active Service ends because you take an Employer approved leave of absence, we will continue their insurance for up to 12 months if the required premium is paid.

EXHIBIT A

TL-004716 (30054)

## DESCRIPTION OF BENEFITS
## WHAT IS COVERED

### Disability Benefits

If you become Disabled, as we define the term in the Definitions section, while you are covered under the Policy, we will pay you Disability Benefits. After you are Disabled, you must satisfy the Benefit Waiting Period and be under the care and treatment of a Doctor. Also, we ask you to provide us with satisfactory proof of your Disability, at your expense, before benefits will be paid.

We will require continued proof of your Disability for benefits to continue.

### Benefit Waiting Period

The Benefit Waiting Period is the period of time you must be continuously Disabled before Disability Benefits may be payable. Your Benefit Waiting Period is shown in the Schedule of Benefits.

We will not require you to satisfy the Benefit Waiting Period if benefits were payable to you under a Prior Plan on the Policy Effective Date and you return to Active Service within 6 months after this date. Your return to Active Service must be for more than 14 consecutive days but less than 6 months. Your later period of Disability must be caused by the same or related causes for your Benefit Waiting Period to be waived.

### Trial Work Days

Under this plan, you can attempt to return to Active Service without having to start a new Benefit Waiting Period if you cannot continue working, provided you have not worked for more than the specified number of days. A period of Disability is continuous even if you can return to Active Service for up to 90 days during the Benefit Waiting Period. Your Benefit Waiting Period will not be extended by the number of days you returned to Active Service during this period.

### Termination of Your Disability Benefits

Your Disability Benefits will end on the earliest of the dates listed below.

1. The date you earn more than 80% of your Indexed Covered Earnings.
2. The date we determine you are no longer Disabled.
3. The date the Maximum Benefit Period ends.
4. The date you die.

### Successive Periods of Disability

Once you are eligible to receive Disability Benefits under the Policy, separate periods of Disability resulting from the same or related causes are a continuous period of Disability even if you can return to Active Service for more than one day but less than 6 consecutive months.

A period of Disability is not continuous if separate periods of Disability result from unrelated causes, or your later Disability occurs after your coverage under the Policy ends.

The Successive Periods of Disability provision will not apply if you are eligible for coverage under a plan that replaces the Policy.

4

000027

EXHIBIT A

**Mental Illness, Alcoholism and Abuse Limitation**

We will pay Disability Benefits on a limited basis during your lifetime for a Disability caused by, or contributed to by, any one or more of the following conditions. Once 24 monthly Disability Benefits have been paid, no further benefits will be payable for any of the following conditions.

1.   Alcoholism
2.   Anxiety Disorders
3.   Delusional (paranoid) disorders
4.   Depressive disorders
5.   Drug addiction or abuse
6.   Eating disorders
7.   Mental Illness
8.   Somatoform disorders (psychosomatic illness).

If, before reaching your lifetime maximum benefit, you are confined in a hospital for more than 14 consecutive days, that period of confinement will not count against the lifetime maximum benefit. The confinement must be for the care or treatment of any of the conditions listed above.

**Pre-Existing Condition Limitation**

We will not pay Disability Benefits if your Disability is caused or contributed to by, or results from, a Pre-Existing Condition. A "pre-existing condition" is any Injury or Sickness for which you incurred expenses, received medical treatment, care or services including diagnostic measures, took prescribed drugs or medicines, or consulted a Doctor within 3 months before your most recent effective date of insurance.

The Pre-Existing Condition Limitation will apply to any added benefits, increases in benefits or benefit amounts in excess of $10,000 per month. It will not apply to a period of Disability that begins after you are in Active Service for at least 12 months after your most recent effective date of insurance, or the effective date of any added or increased benefits.

We will not apply the Pre-Existing Condition Limitation to your Disability if you were covered under your Employer's Prior Plan and satisfied the pre-existing condition of that plan. If you were covered under your Employer's Prior Plan, but did not fully satisfy the pre-existing condition limitation of that plan, we will credit you for any time you did satisfy. If you are now covered for benefits in excess of your Prior Plan coverage, the Pre-Existing Condition Limitation will apply to the excess amount.

Time will not be credited toward this limitation for any day you are not actively at work due to your Injury or Sickness. We will extend the limitation by the number of days you are not actively at work due to your Injury or Sickness.

**Disability Benefit Calculation**

Your Disability Benefit for any month Disability Benefits are payable to you is shown in the Schedule of Benefits. We base our calculation of Disability Benefits on a 30 day period. Benefits will be prorated if payable for any period less than a month.

**Work Incentive Benefit**

For the first 12 months you return to work your Disability Benefit is as defined in the Schedule of Benefits. If, for any month during this period, the sum of your Disability Benefit, your current earnings and any additional Other Income Benefits exceed 100% of your Indexed Covered Earnings, your Disability Benefit will be reduced by the excess amount.

After 12 months, your Disability Benefit is as shown in the Schedule of Benefits, reduced by 50% of your current earnings received during any month you return to work. If the sum of your Disability Benefit, your current earnings and any additional Other Income Benefits exceed 80% of your monthly Indexed Covered Earnings, your Disability Benefit will be reduced by the excess amount.

5

EXHIBIT A

Current earnings include any salary you earn for work performed (and earnings from self-employment) while Disability Benefits are payable. If you are working for another employer on a regular basis when your Disability begins, your current earnings will include any increase in the amount you earn from this work during the period for which Disability Benefits are payable.

We will, from time to time, review your status and will require satisfactory proof of earnings and continued Disability.

## Other Income Benefits

While you are Disabled, you may be eligible to receive benefits from other income sources. If so, we may reduce the Disability Benefits payable to you under the Policy by the amount of these Other Income Benefits. The extent to which Other Income Benefits will reduce your Disability Benefits is shown in the Amounts of Insurance section of the Schedule of Benefits.

Other Income Benefits include:

1. any amounts you or your dependents, if applicable, receive (or are assumed to receive*) under:
   a. the Canada and Quebec Pension Plans;
   b. the Railroad Retirement Act;
   c. any local, state, provincial or federal government disability or retirement plan or law as it pertains to your Employer;
   d. any sick leave plan of your Employer;
   e. any work loss provision in mandatory "No-Fault" auto insurance;
   f. any Workers' Compensation, occupational disease, unemployment compensation law or similar state or federal law, including all permanent as well as temporary disability benefits. This includes any damages, compromises or settlement paid in place of such benefits, whether or not liability is admitted.

2. any Social Security disability benefits you or any third party receive (or are assumed to receive*) either on your behalf or for your dependents; or, if applicable, which your dependents receive (or are assumed to receive*) because of your entitlement to such benefits.

3. any retirement plan benefits you elected, except to the extent such benefits were funded with your contributions. "Retirement Plan Benefits" are based on service with any Kaiser Permanente Medical Care Organization (as listed in Appendix X of the Retirement Plan for Physicians and Salaried Employees of The Permanente Medical Group, Inc.); are based on the method of payment elected but do not include amounts rolled over to an individual retirement account. "Retirement Plan" means any defined benefit plan sponsored or funded by any Kaiser Permanente Medical Care Organization. It does not include an individual deferred compensation plan sponsored or funded by your Employer; a profit sharing or any other retirement or savings plan maintained in addition to a defined benefit or other defined contribution pension plan, or any Employee savings plan including a thrift, stock option or stock bonus plan, individual retirement account or 401(k) plan.

4. any full early retirement plan benefits, which you voluntarily elect to receive, whether such benefits are paid to you or to another payee.

5. any proceeds payable under any franchise or group insurance or similar plan. If there is other insurance that applies to the same claim for Disability, and contains the same or similar provision for reduction because of other insurance, we will pay our pro rata share of the total claim. "Pro rata share" means the proportion of the total benefit that the amount payable under one policy, without other insurance, bears to the total benefits under all such policies.

6. any wage, vacation pay, salary or income from self-employment for work performed. Vacation pay does not include "vacation payoff", which is a lump sum payment of unused accrued vacation time that does not replace earnings. If Work Incentive Benefits apply to you, we will only reduce your Disability Benefits to the extent provided under your Work Incentive Benefit.

Dependents include any person who receives (or is assumed to receive) benefits under any applicable law on account of your entitlement to benefits.

*See the Assumed Receipt of Benefits provision.

6

EXHIBIT A

After we make the first deduction for any Other Income Benefit (except wage, salary or income from self-employment), we will not reduce your Disability Benefits further during that period of Disability due to any cost of living increase in the Other Income Benefit.

*Lump Sum Payments*

Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given. If no time is stated, the lump sum will be prorated monthly over a five-year period.

If no specific allocation of a lump sum payment is made, we will assume the total payment is an Other Income Benefit.

*Assumed Receipt of Benefits*

We will assume you or your dependents, if applicable, are receiving Other Income Benefits if you may be eligible for them. We will estimate the amount of these assumed benefits on the basis of what you may be eligible to receive and reduce your Disability Benefits as if you actually received them.

Except for any wage, salary or self-employment income for work performed while Disability Benefits are payable, we will not assume your receipt of Other Income Benefits if you give us proof of the following events.

1.   Application was made for these benefits.
2.   Reimbursement Agreement is signed by you.
3.   Any and all appeals were made for these benefits, or we have determined further appeals will not be successful.
4.   Payments were denied.

We will not assume you have received, nor will we reduce your Disability Benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until you actually receive them.

*Social Security Assistance*

We will, at our own discretion, assist you in applying for Social Security Disability Income (SSDI) benefits. Disability Benefits will not be reduced by your assumed receipt of SSDI benefits while you participate in the Social Security Assistance Program.

We may require you to file an appeal if we believe a reversal of a prior decision is possible. If you refuse to participate in, or cooperate with, the Social Security Assistance Program, we will assume receipt of SSDI benefits until you give us proof that you have exhausted all the administrative remedies available to you.

Minimum Benefit
We will pay the Minimum Benefit regardless of any reductions made for Other Income Benefits. However, if there is an overpayment due, this benefit may be reduced to recover the overpayment.

Recovery of Overpayment
If we overpay your benefits, we have the right to recover the amount overpaid by either requesting you to pay the overpaid amount in a lump sum or by reducing any amounts payable to you by the amount due. If there is an overpayment due when you die, we will reduce any benefits payable under the Policy to recover the overpayment.

TL-004771 (00054)

EXHIBIT A

**Rehabilitation During A Period of Disability**

If you are Disabled and we determine that you are a suitable candidate for rehabilitation, you may participate in a Rehabilitation Plan. We must agree on the terms and conditions of the Rehabilitation Plan.

The Rehabilitation Plan may, at our discretion, allow for payment of your medical expense, education expense, moving expense, accommodation expense or family care expense while you participate in the program.

A "Rehabilitation Plan" is a written agreement between you and us in which we agree to provide, arrange or authorize vocational or physical rehabilitation services.

**Reasonable Accommodation Benefit**

If you are Disabled, we may reimburse your Employer for expenses incurred in making a Reasonable Accommodation. To be eligible for this benefit, the Reasonable Accommodation must meet the following conditions.

1.  It must be made on your behalf and result in your ability to return to any occupation for your Employer.
2.  It must be approved by us in writing before it is implemented or any expense is incurred.
3.  It must meet federal standards of a Reasonable Accommodation as detailed in the Americans with Disabilities Act of 1990 and any later amendments.

"Reasonable Accommodation" means any modification or adjustment to a job, an employment practice, or the work environment that makes it possible for a person with a disability to perform the material duties of any occupation without causing undue hardship to the Employer.

**Spouse Benefit**

While you are Disabled, your Spouse may, at our option, be eligible to participate in a Rehabilitation Plan. To be eligible, the following conditions must be met.

1.  You must be continuously Disabled for 12 months.
2.  Your Spouse's earnings must be 60% or less than your Covered Earnings.
3.  Your Spouse must be determined by us to be a suitable candidate for rehabilitation.

The Spouse's Rehabilitation Plan may include, at our discretion, payment of your Spouse's education expense, reasonable job placement expenses and moving expenses. It may also include family care expenses if necessary for your Spouse to be retrained under the Rehabilitation Plan.

Disability Benefits will be reduced by 50% of your Spouse's earnings from Rehabilitative Work. If your Spouse was working before the Rehabilitation Plan begins, Disability Benefits will be reduced by 50% of the increase in income that results from your Spouse's participation in the program.

"Spouse" means your lawful Spouse living with you on the date your Disability begins. The Rehabilitation Plan will end if your Spouse is not living with you during the term of the agreement.

TL-005105

**Survivor Benefit**

We will pay a Survivor Benefit if you die while Disability Benefits are payable and at least 6 Monthly Benefits have been payable to you for a continuous period of Disability. The Survivor Benefit will equal 100% of the sum of the last full Disability Benefit payable to you plus any current earnings by which the Disability Benefit was reduced for that month. A single lump sum payment equal to 6 monthly Survivor Benefits will be payable.

8

EXHIBIT    A

We will pay the Surviving Spouse. If you do not have a Spouse, we will pay your surviving Children in equal shares. If you do not have a Spouse or any Children, we will pay your estate.

"Spouse" means your lawful spouse. "Children" means your unmarried children under age 21 who are chiefly dependent upon you for support and maintenance. The term includes a stepchild living with you at the time of your death.

TL-005167

## WHAT IS NOT COVERED

We will not pay any Disability Benefits for a Disability that results, indirectly or directly, from:

1. suicide, attempted suicide, or whenever you injure yourself on purpose.
2. war or any act of war, whether or not declared.
3. serving on full-time active duty in any armed forces. If you send proof of military service, we will refund the portion of the premium paid to cover you during a period of such service.
4. terrorism or active participation in a riot.
5. commission of a felony.
6. revocation, restriction or non-renewal of your license, permit or certification necessary to perform the duties of your occupation unless due solely to Injury or Sickness otherwise covered by the Policy.

We will not pay Disability Benefits for any period of Disability during which you:

7. are incarcerated in a penal or corrections institution.

TL-004772

## CLAIM PROVISIONS

### Notice of Claim
Written notice of claim, or notice by any other electronic/telephonic means authorized by us, must be given to us within 31 days after a covered loss occurs or begins or as soon as reasonably possible. If written notice, or notice by any other electronic/telephonic means authorized by us, is not given in that time, the claim will not be invalidated or reduced if it is shown that notice was given as soon as was reasonably possible. Notice can be given at our home office in Philadelphia, Pennsylvania or to our agent. Notice should include the Employer's name, the Policy Number and the claimant's name and address.

### Claim Forms
When we receive notice of claim, we will send claim forms for filing proof of loss. If we do not send claim forms within 15 days after notice is received by us, the proof requirements may be met by submitting, within the time required under the "Proof of Loss" section, written proof, or proof by any other electronic/telephonic means authorized by us, of the nature and extent of the loss.

### Claimant Cooperation Provision
If you fail to cooperate with us in our administration of your claim, we may terminate the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

### Insurance Data
The Employer is required to cooperate with us in the review of claims and applications for coverage. Any information we provide to the Employer in these areas is confidential and may not be used or released by the Employer if not permitted by applicable laws.

9

EXHIBIT A

**Proof of Loss**
You must provide written proof of loss to us, or proof by any other electronic/telephonic means authorized by us, within 90 days after the date of the loss for which a claim is made. If written proof of loss, or proof by any other electronic/telephonic means authorized by us, is not given in that 90 day period, the claim will not be invalidated nor reduced if it is shown that it was given as soon as was reasonably possible. In any case, written proof of loss, or proof by any other electronic/telephonic means authorized by us, must be given not more than one year after the time it is otherwise required unless proof is not given solely due to the lack of legal capacity.

You must provide us proof that the loss continues at intervals required by us. Within 30 days of a request, written proof, or proof by any other electronic/telephonic means authorized by us, of continued Disability and of regular attendance of a Doctor must be given to us.

**Time of Payment**
Disability Benefits will be paid at regular intervals of not less frequently than once a month. Any balance, unpaid at the end of any period for which we are liable, will be paid at that time.

**To Whom Payable**
Disability Benefits will be paid to you. If any person to whom benefits are payable is a minor or, in our opinion is not able to give a valid receipt, such payment will be made to his or her legal guardian. However, if no request for payment has been made by the legal guardian, we may, at our option, make payment to the person or institution appearing to have assumed custody and support.

If you die while any Disability Benefits remain unpaid, we may, at our option, make direct payment to any of your following living relatives: your spouse, your mother, your father, your children, your brothers or sisters; or to the executors or administrators of your estate. We may reduce the amount payable by any indebtedness due.

Payment in the manner described above will release us from all liability for any payment made.

For plans subject to the Employee Retirement Income Security Act (ERISA), the Plan Administrator of your Employer's employee welfare benefit plan (the Plan) has appointed us as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role we shall have the authority, in our discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by us in this capacity shall be final and binding on participants and beneficiaries of the Plan to the full extent permitted by law.

We have no fiduciary responsibility with respect to the administration of the Plan except as described above. It is understood that our sole liability to the Plan and to participants and beneficiaries under the Plan shall be for the payment of benefits provided under this Policy.

**Physical Examination and Autopsy**
We may, at our expense, exercise the right to examine any person for whom a claim is pending as often as we may reasonably require. Also, we may, at our expense, require an autopsy unless prohibited by law.

**Legal Actions**
No action at law or in equity may be brought to recover benefits under the Policy less than 60 days after written proof of loss, or proof by any other electronic/telephonic means authorized by us, has been furnished as required by the Policy. No such action shall be brought more than 3 years after the time satisfactory proof of loss is required to be furnished.

10

EXHIBIT A

If any time limit stated in the Policy for giving notice of claim or proof of loss, or for bringing any action at law or in equity, is less than that permitted by the law of the state in which you live when the Policy is issued, then the time limit provided in the Policy is extended to agree with the minimum permitted by the law of that state.

**Doctor/Patient Relationship**
You have the right to choose any Doctor who is practicing legally. We will in no way disturb the Doctor/patient relationship.

TL-004724

# ADMINISTRATIVE PROVISIONS

**Premiums**
The premiums for this Policy will be based on the rates currently in force, the plan and the amount of insurance in effect.

**Your Grace Period**
If your required premium is not paid on the Premium Due Date, there is a 31 day grace period after each premium due date after the first. If the required premium is not paid during the grace period, insurance will end on the last day for which premium was paid.

**Reinstatement of Insurance**
Your coverage may be reinstated if your insurance ends because you are on an Employer approved leave of absence. Your insurance may be reinstated only if reinstatement occurs within 12 months from the date it ends due to an Employer approved leave of absence.

For your insurance to be reinstated the following conditions must be met.
1.    You must qualify under the Class Definition.
2.    The required premium must be paid.
3.    A written request for reinstatement and a new enrollment form for you must be received by us within 60 days from the date you return to Active Service.

Your reinstated insurance is effective on the date you return to Active Service. If you did not fully satisfy your Eligibility Waiting Period or Pre-Existing Condition Limitation before your insurance ended due to a leave of absence, you will receive credit for any time that was satisfied.

TL-004722 (30054)

# GENERAL PROVISIONS

**Incontestability**
The validity of the Policy shall not be contested except for non-payment of premium after the Policy has been in force for two years from the date of issue.

All statements made by the Employer or by you are representations not warranties. No statement will be used by us to deny or reduce benefits or as a defense to a claim, unless a signed copy of the instrument containing the statement has been given to you. In the event of your death or legal incapacity, your beneficiary or representative will receive the signed copy.

Except for fraud or for determining eligibility for insurance, we will not use any statement to contest your insurance after two years from the effective date of your coverage or from the effective date of any added or increased benefits.

11

EXHIBIT A

**Misstatement of Age**
If your age is misstated, we will adjust benefits to the amounts that would have been purchased for your correct age.

**Workers' Compensation Insurance**
Benefits payable under the Policy are not in lieu of and do not affect any requirements for coverage under any Workers' Compensation Insurance.

**Assignment of Benefits**
We will not be affected by the assignment of your certificate until the original assignment or a certified copy of the assignment is filed with us. We will not be responsible for the validity or sufficiency of an assignment. An assignment of benefits will operate so long as the assignment remains in force provided coverage under the Policy is in effect. Your insurance may not be levied on, attached, garnisheed, or otherwise taken for your debts. This prohibition does not apply where contrary to law.

**Conformity with State Statutes**
Any provision of the Policy in conflict on the Policy Effective Date with the laws of the state where the Policy is delivered is amended to conform to the minimum requirements of such laws.

**Clerical Error**
Your insurance will not be affected by error or delay in keeping records of insurance under the Policy. If such an error is found, the premium will be adjusted fairly.

**Agency**
The Employer and Plan Administrator are your agents for transactions relating to your insurance under the Policy. We are not liable for any of their acts or omissions.

TL-004728

## DEFINITIONS

Please note, certain words used in this document have specific meanings. These terms will be capitalized throughout this document. The definition of any word, if not defined in the text where it is used, may be found either in this Definitions section or in the Schedule of Benefits.

**Active Service**
If you are an Employee or Physician, you are in Active Service on a day which is one of your Employer's scheduled work days if either of the following conditions are met.
1.    You are actively at work. This means you are performing your regular occupation for the Employer on a Full-time basis, either at one of the Employer's usual places of business or at some location to which the Employer's business requires you to travel.
2.    The day is a scheduled holiday, vacation day or period of Employer approved leave of absence.

You are in Active Service on a day which is not one of the Employer's scheduled work days only if you were in Active Service or on an approved leave of absence on the preceding scheduled work day.

**Appropriate Care**
Appropriate Care means the determination made by a Doctor of an accurate and medically supported diagnosis of the cause of your Disability, or a plan established by a Doctor of ongoing medical treatment and care of your Disability that conforms to generally accepted medical standards, including frequency of treatment and care.

12

**000035**

EXHIBIT A

Consumer Price Index
The Consumer Price Index for Urban Wage Earners and Clerical Workers published by the U.S. Department of Labor. If the index is discontinued or changed, another nationally published index that is comparable to the CPI-W will be used.

Contract Physician
A Contract Physician is a Physician who is employed by the Employer on a regular basis but is not eligible to become a Participant or Senior Physician or a shareholder. He or she must work at least six units (six half-days) per week for the Corporation and his or her employment requires the approval of the Board of Directors. The Board of Directors may grant up to 1096 units credit toward Participant Physician status for service as a Contract Physician.

Covered Earnings
Covered Earnings means your prorated base compensation as reported by the Employer for work performed for the Employer as in effect just prior to the date your Disability begins. Prorated base compensation is based on units of tenths (10th) with each unit being equal to 4 hours. (For example, 10/10 equals 40 hours.) Covered Earnings are determined initially on the date an Employee or Physician applies for coverage. A change in the amount of Covered Earnings is effective on the first of the month following the change, if the Employer gives us written notice of the change and the required premium is paid.

It does not include any amounts received as bonus, commissions, overtime pay or other extra compensation.

Any increase in your Covered Earnings will not be effective during a period of continuous Disability.

Disability
For purposes of coverage under the Policy, you are Disabled if, because of Injury or Sickness, you are unable to perform all the material duties of your regular occupation, or solely due to Injury or Sickness, you are unable to earn more than 80% of your Indexed Covered Earnings.

After Disability Benefits have been payable for 60 months, you are Disabled if your Injury or Sickness makes you unable to perform all the material duties of any occupation for which you may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, you are unable to earn more than 80% of your Indexed Covered Earnings.

Doctor
Doctor means a licensed physician practicing within the scope of his or her license and rendering care and treatment to an Insured that is appropriate for the condition and locality. The term does not include you, your spouse, your immediate family (including parents, children, siblings, or spouses of any of the foregoing, whether the relationship derives from blood or marriage), or a person living in your household.

Employee or Physician
For eligibility purposes, you are an Employee or Physician if you work for the Employer and are in one of the "Classes of Eligible Employees." Otherwise, you are an Employee or Physician if you are an employee of the Employer who is insured under the Policy.

Employer
The Policyholder and any affiliates or subsidiaries covered under the Policy. The Employer is acting as your agent for transactions relating to this insurance. You shall not consider any actions of the Employer as actions of the Insurance Company.

Full-time
Full-time means the number of hours set by the Employer as a regular work day for individual Employees or Physicians in your eligibility class.

EXHIBIT A

## Indexed Covered Earnin

For the first 12 months Monthly Benefits are payable, your Indexed Covered Earnings are equal to your Covered Earnings. After 12 Monthly Benefits are payable, your Indexed Covered Earnings are your Covered Earnings plus an increase applied on each anniversary of the date Monthly Benefits became payable. The amount of each increase will be the lesser of:

1.    10% of your Indexed Covered Earnings during your preceding year of Disability; or
2.    the rate of increase in the Consumer Price Index (CPI-W) during the preceding calendar year.

## Injury

Any accidental loss or bodily harm that results directly or independently from all other causes from an Accident.

## Insurability Requirement

An eligible person satisfies the Insurability Requirement for an amount of coverage on the day we agree in writing to accept you as insured for that amount. To determine a person's acceptability for coverage, we will require you to provide evidence of good health and may require it be provided at your expense.

## Insurance Company

The Insurance Company underwriting the Policy is named on your certificate cover page. References to the Insurance Company have been changed to "we", "our", "ours", and "us" throughout the certificate.

## Insured

You are an Insured if you are eligible for insurance under the Policy, insurance is elected for you, the required premium is paid and your coverage is in force under the Policy.

## Prior Plan

The Prior Plan refers to the plan of insurance providing similar benefits to you, sponsored by the Employer and in effect directly prior to the Policy Effective Date.

## Sickness

The term Sickness means a physical or mental illness.

TL-004788 (30054)

EXHIBIT   A

**SUPPLEMENTAL INFORMATION**
for

The Permanente Medical Group, Inc.

required by the Employee Retirement
Income Security Act of 1974

As a Plan participant in The Permanente Medical Group, Inc.'s Insurance Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

You should refer to the attached Certificate for a description of when you will become eligible under the Plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description as required by ERISA.

## IMPORTANT INFORMATION ABOUT THE PLAN

- The Plan is established and maintained by The Permanente Medical Group, Inc.

- The Employer Identification Number (EIN) is 94-2728480.

- The Plan Number is 602.

- The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in accordance with the provisions of the group insurance contract, LK-030054, issued by LIFE INSURANCE COMPANY OF NORTH AMERICA.

- The Plan Administrator is:      The Permanente Medical Group, Inc.
                                  1800 Harrison Street
                                  Floor 7
                                  Oakland, CA 94612

    The Plan Administrator has authority to control and manage the operation and administration of the Plan. The Plan Administrator may terminate, suspend, withdraw or amend the Plan, in whole or in part, at any time, subject to the applicable provisions of the Policy. (Your rights upon termination or amendment of the Plan are set forth in your Certificate.)

- The agent for service of legal process is the General Counsel of The Permanente Medical Group.

- The Plan of benefits is financed by Employee Contributions.

- The date of the end of the Plan Year is December 31.

## YOUR RIGHTS AS SET FORTH BY ERISA

As a Plan participant, ERISA gives you certain rights and protection. To ensure the protection of these rights, ERISA requires any person or entity who is responsible for the operation of the Plan to administer the Plan in a fiduciary capacity. This means that this person, or entity, must act prudently and with the sole purpose of the Plan participants in mind.

EXHIBIT A

a.    Allow you to examine, without charge, at the Plan Administrator's office, all Plan documents including insurance contracts, collective bargaining agreements and copies of all documents filed by the Plan with the U.S. Department of Labor, such as, annual reports and Plan descriptions.

b.    Provide you with Plan documents and other Plan information. Any request you make for this information must be in writing to the Plan Administrator. There may be a reasonable charge for the copies.

c.    Provide you with a summary of the Plan's annual financial report. (On certain plans, the law requires the Plan Administrator to provide you with this information.)

Unless there are reasons beyond the Plan Administrator's control, materials you request should be received within 30 days. If you do not receive these materials within that time, you may file suit in a federal court. The court may require the Plan Administrator to pay you up to $110 for each day the material is delayed.

No one, not even your employer, may fire you or discriminate against you in order to prevent you from obtaining a benefit or exercising the rights you have under ERISA.

You may file suit in a federal or state court if any of the following situations arise:

a.    You believe you have been improperly denied a benefit, in whole, or in part.

b.    You believe the Plan fiduciaries are misusing Plan funds.

c.    You believe you have been discriminated against for asserting your rights. (In this case, you may file suit in court or request assistance from the U.S. Department of Labor.)

The court will decide who should pay court costs and legal fees. If you win your case, the court may order the person you have sued to pay the costs and fees. However, if you lose, or if the court finds that your suit is frivolous, you may be required to pay the costs and fees.

## WHAT YOU SHOULD DO AND EXPECT IF YOU HAVE A CLAIM

When you are eligible to receive benefits under the Plan, you must request a claim form or obtain instructions for submitting your claim telephonically or electronically, from the Plan Administrator. All claims you submit must be on the claim form or in the electronic or telephonic format provided by the Insurance Company. You must complete your claim according to directions provided by the Insurance Company. If these forms or instructions are not available, you must provide a written statement of proof of loss. After you have completed the claim form or written statement, you must submit it to the Physician Benefits and Compensation Department, 1800 Harrison Street, 7th Floor, Oakland, CA 94612.

The Employer has appointed the Insurance Company as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on participants and beneficiaries to the full extent permitted by law.

EXHIBIT   A

The Insurance Company will ... om the date it receives your claim fo ... benefits, or 90 days from the date it receives a cl... /or any other benefit, to determine whether or not benefits are payable to you in accordance with the terms and provisions of the Policy. The Insurance Company may require more time to review your claim if necessary due to circumstances beyond its control. If this should happen, the Insurance Company must notify you in writing that its review period has been extended for up to two additional periods of 30 days (in the case of a claim for disability benefits), or one additional period of 90 days (in the case of any other benefit). If this extension is made because you must furnish additional information, these extension periods will begin when the additional information is received. You have up to 45 days to furnish the requested information.

During the review period, the Insurance Company may require a medical examination of the Insured, at its own expense; or additional information regarding the claim. If a medical examination is required, the Insurance Company will notify you of the date and time of the examination and the physician's name and location. It is important that you keep any appointments made since rescheduling examinations will delay the claim process. If additional information is required, the Insurance Company must notify you, in writing, stating the information needed and explaining why it is needed.

If your claim is approved, you will receive the appropriate benefit from the Insurance Company.

If your claim is denied, in whole or in part, you must receive a written notice from the Insurance Company within the review period (or within 75 or 105 days if the review period was extended). The Insurance Company's written notice must include the following information:

1.    The specific reason(s) the claim was denied.
2.    Specific reference to the Policy provision(s) on which the denial was based.
3.    Any additional information required for your claim to be reconsidered, and the reason this information is necessary.
4.    In the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically-related exclusion or limitation involved in the decision.
5.    A statement informing you of your right to appeal the decision, and an explanation of the appeal procedure, as outlined below.

Appeal Procedure for Denied Claims

Whenever a claim is denied, you have the right to appeal the decision. You (or your duly authorized representative) must make a written request for appeal to the Insurance Company within 60 days (180 days in the case of any claim for disability benefits) from the date you receive the denial. If you do not make this request within that time, you will have waived your right to appeal.

Once your request has been received by the Insurance Company, a prompt and complete review of your claim must take place. This review will give no deference to the original claim decision, and will not be made by the person who made the initial claim decision. During the review, you (or your duly authorized representative) have the right to review any documents that have a bearing on the claim, including the documents which establish and control the Plan. Any medical or vocational experts consulted by the Insurance Company will be identified. You may also submit issues and comments that you feel might affect the outcome of the review.

The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision (45 days, in the case of any claim for disability benefits). Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days (45 days in the case of any claim for disability benefits). Once its review is complete, the Insurance Company must notify you, in writing, of the results of the review and indicate the Plan provisions upon which it based its decision.

17

000040

EXHIBIT  A

If you have any questions about the Plan, contact the Plan Administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefit Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

While ERISA requirements are established by federal law and regulation, The Permanente Medical Group, Inc. has always attempted to provide its employees with welfare benefit plans that meet the same high standards imposed by the law. We are pleased that the law will enable better application of these standards.

LM-SB35a

EXHIBIT A